STATE OF HAWAII, Plaintiff-Appellee *v.* JACK LEE STANLEY, also known as Jack Eli Stanley, Defendant-Appellant

NO. 6399

MARCH 22, 1979

RICHARDSON, C.J., OGATA and MENOR, JJ., and Retired Justice MARUMOTO in Place of KIDWELL, J., Absent*

---

* Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant Jack Lee Stanley (hereinafter appellant) challenges the constitutionality of the family court waiver of jurisdiction statute, HRS § 571-22 (1976), both on its face and as applied. This appeal results from appellant's conviction after a jury trial on charges of both murder[1] and robbery in the first degree.[2] We find no constitutional infirmity with respect to HRS § 571-22 (1976), and we therefore affirm the conviction.

Appellant was 16 years old at the time of the commission of these offenses. Proceedings were initiated against appellant on both charges in the family court of the first circuit.[3] Subsequently, the office of the prosecuting attorney filed a petition for waiver of jurisdiction pursuant to HRS § 571-22 (1976).[4] Hearings on the petition for waiver were held before the family court on April 27 and June 1, 1976.

---

[1] See HRS § 707-701 (1976).

[2] See HRS § 708-840(1)(a) (1976).

[3] Charges were initiated pursuant to HRS §§ 571-21 and 571-11 (1976).

[4] HRS § 571-22 (1976) outlines the conditions under which the family court may waive jurisdiction over a person who is alleged to have committed, while a minor of at least 16 years of age, a felony offense. The operative provision is HRS § 571-22(a) (1976), which provides as follows:

  *Waiver of jurisdiction; transfer to other courts.* The court may waive jurisdiction and order a minor or adult held for criminal proceedings after the full investigation and hearing where the person during his minority, but on or after his

At the conclusion of the hearing held on June 1, 1976, the family court announced its decision to waive jurisdiction over appellant in favor of criminal prosecution in circuit court. A written order granting the petition for waiver was filed on June 2, 1976.[5]

No appeal was taken by appellant from the family court order waiving jurisdiction. The grand jury indicted appellant

---

sixteenth birthday, is alleged to have committed an act which would constitute a felony if committed by an adult, and the court finds there is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill, is not treatable in any available institution or facility within the State designed for the care and treatment of children, or that the safety of the community requires that the person continue under judicial restraint for a period extending beyond his minority.

[5] The order was subsequently amended to correct a clerical error relating to appellant's age. The full text of the amended order reads as follows:

The Petitions for Waiver of Jurisdiction filed on behalf of the State of Hawaii by its Prosecuting Attorney of the City and County of Honolulu, having come on to be heard on the 1st day of June, 1976, before the Honorable John T. West, Jr., Judge of the above-entitled Court and full investigation having been made as required by § 571-22, *H.R.S.* and the person, JACK LEE STANLEY, aka JACK ELI, being present and represented by his attorney, Ken T. Kuniyuki; and the State being represented by Lydia Garcia, Deputy Prosecuting Attorney; and this Court having considered all the evidence presented and the files of the Family Court including those submitted by the persons appointed to investigate and advise the Court, doctors appointed by the Court to make and report on the mental and physical condition of JACK LEE STANLEY, aka JACK ELI as well as oral arguments on his behalf, the Court waived jurisdiction over the person and offenses of JACK LEE STANLEY, aka JACK ELI whose birth date is July 27, 1959, and who, by two separate petitions filed in this Court on January 9th, 1976 and was charged with the offenses: Robbery in the First Degree and Murder. The Court further determined, based on all the evidence adduced and the Court's files and records of which it took judicial notice, that the said JACK LEE STANLEY, aka JACK ELI was sixteen years of age at the time of the alleged offenses, which offenses would constitute a felony if committed by an adult, and that:
(a) JACK LEE STANLEY, aka JACK ELI is not committable to an institution for the mentally defective or retarded or the mentally ill, nor is he treatable in any available institution or facility within the State designed for the care and treatment of children;
(b) the safety of the community requires that JACK LEE STANLEY; aka JACK ELI continue under judicial restraint for a period extending beyond his minority.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this Court waive jurisdiction over said JACK LEE STANLEY, aka JACK ELI.

for murder and robbery in the first degree, and he was tried in circuit court and convicted as charged. This appeal followed.[6]

Subsequent to the submission of the briefs in this case, the State moved to dismiss the appeal for lack of jurisdiction. This motion was heard together with argument on the merits of the case. We proceed first to discuss the State's motion.

## I. MOTION TO DISMISS.

The State's motion to dismiss this appeal for lack of jurisdiction is based principally on the contention that a family court order cannot be reviewed on an appeal from a circuit court judgment.[7] The State relies primarily upon *People v. Chi Ko Wong*, 18 Cal.3d 698, 557 P.2d 976, 135 Cal. Rptr. 392 (1976), and *State v. Harwood*, 98 Idaho 793, 572 P.2d 1228 (1977), for the proposition that a waiver-type proceeding may only be challenged *prior* to commencement of the criminal trial on the offenses charged.

While we have commented on this issue in previous cases, no determination has been made by this Court as to whether a defendant may, subsequent to criminal conviction, choose to attack the propriety of the family court's decision to waive jurisdiction. In *In re Doe I*, 50 Haw. 537, 444 P.2d 459 (1968), this Court did hold that a waiver order is a final, appealable

---

[6] Appellant was represented in both the family court and circuit court by court-appointed private counsel. The office of the public defender undertook representation of appellant on this appeal pursuant to the Withdrawal and Appearance of Counsel filed on February 11, 1977.

[7] The State also contends that the Notice of Appeal in this case was not timely filed. The State's argument is based upon its assumption that this appeal is taken from the family court waiver order of June 2, 1976 (as amended June 14, 1976). The Notice of Appeal was filed on November 24, 1976, and the State thus contends that it was not filed within the required 30 days from entry of judgment. *See* Rule 73(a), Hawaii Family Court Rules (1972). We see no merit to this argument. The parties have heretofore recognized this case as an appeal from the judgment of conviction in the circuit court, and we duly treat it as such. There is no dispute as to the timeliness of the filing of the Notice of Appeal from the judgment of conviction.

decision. However, it was questioned in *Doe I* whether an appeal of a family court waiver order might properly be taken from a circuit court judgment. As was stated in that case:

> Even if such review is possible, the right to such review is a hollow one, for, by then, many of the safeguards [of the family court system], including freedom from adverse publicity, would have been irretrievably lost.

*Id.* at 539, 444 P.2d at 460. This Court nonetheless refrained in *Doe I* from deciding whether to disallow review of family court waiver orders in such situations.

The concerns expressed in *Doe I* were subsequently recited in *In re Doe,* 57 Haw. 413, 558 P.2d 483 (1976). In *Doe,* the appellant appealed to this Court directly from the family court order waiving jurisdiction, and he moved for a stay of enforcement of the waiver order pending appeal. Although we ultimately denied the motion to stay due to inadequacy of the appellate record, we nonetheless expressed serious concern in *Doe* for the preservation to a minor of the safeguards of the family court system.

> The logic of our holding in *John Doe I* supports the motion for a stay of execution. The threat to appellant is the same, whether it is the lack of a stay of execution, rather than the lack of a direct avenue of appeal, which may cause the appellant to be subjected to criminal prosecution before review of the waiver order can be had.

57 Haw. at 415, 558 P.2d at 485.

More recently, however, we briefly noted the contrary concern that direct appeal of a waiver order with stay of execution may engender difficulties through possible delay in the onset of trial. *In re Dinson,* 58 Haw. 522, 574 P.2d 119 (1978). However, no resolution of the issue was necessary in *In re Dinson, supra,* and we went on to state that "[t]hese problems appear to be more susceptible to legislative than judicial solution." *Id.* at 526, 574 P.2d at 122 n. 4.

Upon careful reconsideration of this entire problem, however, we are convinced that, absent legislative resolution, this issue can and should be resolved by this Court in favor of a requirement of direct appeal from a family court order waiving jurisdiction. We have found the reasons articulated by the

Supreme Court of California in *People v. Chi Ko Wong, supra,* to be persuasive:

> [S]ound practical considerations demand that a juvenile court finding of unfitness and certification [waiver] order should not be reviewed on appeal from a criminal judgment of conviction. To allow a defendant who has been convicted in the superior court to question on appeal the propriety of the juvenile court's finding would afford him an opportunity to secure a reversal of a judgment of conviction even though he was found guilty after an errorless trial. Such a defendant should not be allowed to silently speculate on a favorable verdict and then after an adverse judgment is entered proclaim that the juvenile court's finding was erroneous. Moreover, it is in the accused's best interest to seek immediate relief from an improper finding in the juvenile court so he may be spared the burden and public scrutiny associated with a criminal trial. Additionally, the delay inherent in criminal prosecutions may substantially prejudice a juvenile court reconsideration of its prior finding of unfitness should the cause be remanded after a review of criminal proceedings.

18 Cal.3d at 712, 557 P.2d at 985, 135 Cal.Rptr. at 401 (citations and footnote omitted). The Supreme Court of Idaho has adopted this reasoning in full in *State v. Harwood, supra,* and has thus held that review of a waiver order must be sought before the charges have proceeded to trial.

On balance, the approach taken by the courts in *People v. Chi Ko Wong, supra,* and *State v. Harwood, supra,* appears best-suited to serving the interests at stake. As stated in *People v. Chi Ko Wong, supra:*

> [A] timely review . . . may spare a minor the burden of an unnecessary trial and thus promote justice and judicial economy. It also assures that, if warranted, reconsideration by the juvenile court will be made on timely information without the need for updated reports and affidavits.

18 Cal. 3d at 713, 557 P.2d at 986, 135 Cal. Rptr. at 402; *see* Note, *Review of Improper Juvenile Transfer Hearings,* 60 Va. L. Rev. 818, 836-38 (1974). We have weighed these considerations against possible problems associated with delay in

the onset of trial pending appeal, and we are satisfied that any threat to the successful operation of the trial process can be minimized by the careful exercise of discretion in deciding whether to stay execution of the waiver order pending appeal.[8] Therefore, we hold that a family court order waiving jurisdiction must be appealed from prior to the commencement of the criminal trial on the offenses charged.[9]

Due to the absence of clear direction in our previous cases regarding the proper time for challenging a waiver order, however, we believe it proper to apply the rule announced today only prospectively. *People v. Chi Ko Wong, supra.* Hence, our holding will only affect adult criminal proceedings commenced subsequent to the issuance of this opinion. The State's motion to dismiss the appeal will thus be denied.

We now go on to consider the merits of appellant's claims.

II.   CONSTITUTIONALITY OF HRS § 571-22 (1976).

A.  Facial Constitutionality

Appellant first argues that HRS § 571-22 (1976) is void for vagueness for two reasons: (1) the statute assertedly fails to

---

[8] Although "a stay of execution of a family court order waiving jurisdiction of a minor, pending the minor's appeal, should ordinarily be granted to protect the fundamental fairness and efficiency of the judicial process", *In re Doe, supra,* 57 Haw. at 415, 558 P.2d at 485, such a stay is by no means automatic. Rather, a court must undertake to weigh that interest against possible countervailing interests in determining whether to grant the motion to stay pending appeal. We mentioned some of these countervailing interests in *In re Doe, supra:*

> We must recognize the interest of society in avoiding delay in bringing offenders to trial, which interest is entitled to protection, at least to the extent of avoiding inducement of unmeritorious appeals whose principal purpose is to delay trial. We must also be attentive to the possible consequences of leaving the accused under the jurisdiction of the family court, which may have neither appropriate detention facilities nor power to release on bail. We conclude that a stay of a waiver order may be granted only after the family court or this court has weighed the opposing interests in the proper exercise of judicial discretion.

*Id.* at 416, 558 P.2d at 485. Thus, either the family court or this Court may deny a motion to stay if convinced of the necessity for avoiding a delay which would seriously impede the conduct of the criminal trial.

[9] No intent to extend this pronouncement beyond the context of *appeals* from criminal convictions (as distinguished, for example, from post-conviction proceedings seeking habeas corpus relief) should be inferred, however.

provide adequate notice to a person as to the types of activities which are prohibited, and (2) it assertedly fails to provide adequate standards upon which a court may determine whether to waive jurisdiction.

The first of appellant's objections for vagueness ordinarily applies only to statutes which create and define criminal offenses. *State v. Scoville,* 113 N.H. 161, 164, 304 A.2d 366, 369 (1973); *see In re Juvenile,* 364 Mass. 531, 537, 306 N.E.2d 822, 827 (1974); *In re Welfare of Burtts,* 12 Wash. App. 564, ____, 530 P.2d 709, 715 (1975). Here, HRS § 571-22 (1976) does no more than deal with a procedural function under which a court decides upon the consequences which will attach to an alleged violation of the law. *Scoville, supra; In re Juvenile, supra; Burtts, supra.* Hence, appellant's objection that HRS § 571-22 (1976) fails to adequately notify a person of prohibited conduct is misplaced.

Appellant's second objection also fails, for HRS § 571-22 (1976) provides adequate guidelines for a judicial determination of waiver of jurisdiction. HRS § 571-22 (1976) provides that the family court may waive jurisdiction if it finds that there is no evidence that the juvenile is committable to an institution for the mentally defective or retarded or mentally ill, *and* that *either* he is not treatable in "any available institution or facility within the State designed for the care and treatment of children," *or* that "the safety of the community requires that the person continue under judicial restraint for a period extending beyond his minority." *In re Dinson, supra,* 58 Haw. at 526-27, 574 P.2d at 123. To require standards more precise than this would be beyond the realm of practical expectation, for "[t]he factors entering into a [family court] judge's decision on disposition of a child brought before him are many and varied." *State v. Owens,* 197 Kan. 212, 225, 416 P.2d 259, 271 (1966).[10] As stated in *Lewis v. State,* 86 Nev.

---

[10] Courts have listed a wide range of factors which may bear upon a decision as to waiver of jurisdiction, such as "prior contacts with law enforcement agencies, seriousness of the offense, social investigation, and mental and physical condition". *Richardson v. State,* 555 S.W.2d 83, 87 (Mo.App. 1977); see also *Inge v. Slayton,* 453

889, 894, 478 P.2d 168, 171 (1970), *quoting State v. Doyal*, 59
N.M. 454, 460, 286 P.2d 306, 310 (1955):

> The considerations that might so move a judge [in a
> waiver proceeding] are so multifarious, however, that to
> test the validity of legislation by an omission to list them
> would be almost equivalent to attempting to name all the
> advantages of being upright and good.

Moreover, as we viewed in *In re Dinson, supra,* a waiver
proceeding is "primarily dispositional and essentially of the
nature of the ordinary sentencing proceeding." 58 Haw. at
527, 574 P.2d at 123. "In any area where the judicial function
is analogous to sentencing, because the particular crime and
the record and background of the accused must be given
special attention, individual consideration and treatment are
inherent in the decisional process." *In re Juvenile, supra,* 364
Mass. at 538, 306 N.E.2d at 827. Precise standards as to the
factors to be considered, as well as the weight to be attributed
to them, in a waiver determination are thus not constitu-
tionally required to be set out in the waiver statute.[11]

We consequently reject appellant's contention that HRS §
571-22 (1976) is void for vagueness. We now proceed to con-
sider whether the statute is unconstitutional as applied.

## B. Constitutionality As Applied

Appellant asserts that, as applied, HRS § 571-22 (1976)
unconstitutionally deprives him of due process. His attack

---

F.Supp. 350, 353 (E.D. Va. 1978), and *People v. Chi Ko Wong, supra,* 18 Cal.3d at
717, 557 P.2d at 988, 135 Cal. Rptr. at 404. More generally, it has been stated that a
family court judge "must consider the juvenile's past, his future, his mind, and his
acts and then balance these factors against the safety, needs, and demands of
society." *In re Welfare of Harbert,* 85 Wash. 2d 719, 726, 538 P.2d 1212, 1217 (1975)
(en banc), *quoting Miller v. Quatsoe,* 332 F.Supp. 1269, 1275 (E.D. Wis. 1971).

[11] We do not, of course, ignore the procedural standards set out in *Kent v. United
States,* 383 U.S. 541 (1966). *See* discussion in Part II.B, *infra.* We have previously
looked to the *Kent* due process standards in assessing the validity of a family court
waiver order. *In re Doe I,* 50 Haw. 620, 446 P.2d 564 (1968), and we adhere to the view
that these standards are to be followed in family court waiver proceedings.

focuses solely upon the family court's written waiver order, which he contends fails to meet the requirements of *Kent v. United States*, 383 U.S. 541 (1966).

In *Kent*, the Supreme Court determined that because a waiver determination is a "critically important" proceeding, 383 U.S. at 560, it would be inconsistent with due process and fairness to conduct such a proceeding without hearing, without effective assistance of counsel, and without a statement of reasons supporting the waiver decision. Appellant does not dispute that he was properly afforded counsel and that a full hearing was held. We thus determine whether the waiver order in the instant case adequately sets out the reasons for the decision to waive jurisdiction.

While *Kent* provides that a statement of reasons need not be formal or necessarily include conventional findings of fact, 383 U.S. at 561; *In re Doe I*, 50 Haw. 620, 623, 446 P.2d 564, 567 (1968), "the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the [family court]; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Kent, supra* at 561.

Here, the family court concluded in its waiver order that, after having considered all the testimonial and documentary evidence presented, appellant (a) "is not committable to an institution for the mentally defective or retarded or the mentally ill, nor is he treatable in any available institution or facility within the State designed for the care and treatment of children", and (b)"the safety of the community requires that [appellant] continue under judicial restraint for a period extending beyond his minority." While no extensive findings of fact were included in the order, we find no problem in determining that the *Kent* standards have been satisfied and that appellant's right to due process has not been violated. The oral statements made by the family court at the June 1, 1976, waiver hearing, together with the remainder of the family court record, adequately reveal that the decision to waive jurisdiction was made after full investigation and considera-

tion of the evidence.[12] Moreover, the family court carefully considered the standards for waiver as set out in HRS § 571-22 (1976), and the resultant decision to waive jurisdiction is supported by substantial evidence.

---

[12] *See* text of amended order granting petition for waiver of jurisdiction, n. 5 *supra*.

The transcript contains the following comments made by the family court during discourse with both appellant's stepfather and attorney near the conclusion of the June 1 hearing:

[T]he problem here . . . is that Jack does need help. Our doctors have emphasized, the psychiatrist emphasized that the treatment Jack would need would be a long-term treatment. They emphasized that we're dealing — in dealing with Jack we're dealing with a lifelong problem. And I think you brought the same thing up here. This is a lifelong problem.

*        *        *        *        *

Doctor Adams has testified that since this is a lifelong problem with Jack that it's going to take a long time to clear it up. . . .

Habilitat is really out unless Jack commits himself to Habilitat. This Court would have no control if he can enter Habilitat even pass [past] his nineteenth birthday.

*        *        *        *        *

The State Hospital. All our reports show that Jack is not commitable [committable] to State Hospital. That's been the problem. If he was admittable to State Hospital, then he would not be in here.

*        *        *        *        *

It's a matter of at this time of protecting the public. The public has a right to protection also. You heard out [our] doctors' testimony and the doctors' statement. They said to change Jack from where he is not a danger to society is a long time deal. And Doctor Lind said that nothing would happen before fourteen months and only by that time you can begin to see a trend. . . .

That would be a trend. Doctor Adams testified that it would be a couple of years. Now, I agree with Doctor Adams and Doctor Lind that Habilitat would be the best place for — or the best treatment we've got here. I'm not sure it's the best treatment that Jack could have. I think probably there's better treatment on the mainland than Habilitat. However, this Court is really without the power to keep Jack in Habilitat for the length of time.

Frankly, I'm going to waive him today for adult prosecution. This does not mean that he will not go to Habilitat because the judges here quite frequently have sent people to Habilitat where they're on parole for five years, ten years. You go to Habilitat, you stay there; otherwise, you have violated parole. In other words, they've got the club over him. You will stay and get the full treatment.

*        *        *        *        *

I think that a long-term treatment is needed and I think the adult court can send him there and they keep — they have the power, the clout, which they say to keep him there. It's been all the testimony, the evidence, the medical evidence I've got. I've got no alternative but to waive him.

It is apparent that the family court took into consideration such factors as appellant's past record, mental and physical health, the nature and seriousness of the offense alleged to have been committed, and the likelihood of rehabilitation under the supervision of the family court. *See* n. 10, *supra*. While it is true that certain medical and psychiatric testimony was presented to the effect that appellant might possibly be rehabilitated under the supervision of the family court, such testimony was not necessarily controlling and the family court was entitled to weigh that testimony in the same light as all other evidence presented at the waiver hearing. *In re G.D.C.*, 581 P.2d 908, 911 (Okla.Crim. 1978); *In re R.M.*, 561 P.2d 572, 575 (Okla. Crim. 1977).

In our opinion, the waiver order, together with the oral statements made by the family court, reveal with sufficient specificity the reasons for the court's decision so as to permit meaningful review. Our review of the entire record, in light of the order waiving jurisdiction, reveals that the requirements of *Kent* have been met and that appellant was not deprived of due process of law. *People v. Chi Ko Wong, supra; In re Cole*, 280 Ore. 173, 570 P.2d 365 (1977); *State v. Salas*, 520 P.2d 874 (Utah 1974); *Lujan v. District Court*, 161 Mont. 287, 505 P.2d 896 (1973); *Lewis v. State*, 86 Nev. 889, 478 P.2d 168 (1970); *In re Welfare of Burtts*, 12 Wash. App. 564, 530 P.2d 709 (1975); *Sherfield v. State*, 511 P.2d 598 (Okla. Crim. 1973). Our review of the record further reveals that the family court properly exercised its discretion in determining that waiver of jurisdiction was warranted in this case. *Cf. State v. Smith*, 59 Haw. 456, 465-66, 583 P.2d 337, 343-44 (1978) (a decision by the family court to waive jurisdiction is discretionary); *State In re B.T.*, 145 N.J. Super. 268, 274, 367 A.2d 887, 890 (1976) (a waiver decision is overturned only if arbitrary as a mistaken exercise of discretion), *petition for certification denied*, 73 N.J. 49, 372 A.2d 314 (1977).[13]

---

[13] We feel it necessary, to point out, however, that while meaningful review of the waiver decision has been possible in the instant case through evaluation of the entire record, the presence of an inadequate record may altogether preclude such meaningful review in a future case. This may especially be a problem in view of the practice in

The judgment of conviction is affirmed.

*Alvin T. Ito,* Deputy Public Defender (argued on the motion to dismiss), and *Pamela J. Berman,* Deputy Public Defender (argued on the merits), for Defendant-Appellant.

*Michael A. Lilly,* Deputy Attorney General, for Plaintiff-Appellee.

---

waiver hearings of electronically tape recording the proceedings for subsequent transcription. Either loss of the tape recordings or a prolonged mechanical malfunction would present obvious difficulties in permitting full review of the record by this Court. In such a situation, this Court may have no choice but to vacate the decision of the family court and to remand the case for rehearing.

The family court may thus wish to consider the adoption of the practice of including in all waiver orders written summaries of factual findings relevant to the particular waiver decision, along with a general statement of the factors and considerations which moved the court to render the decision which it did. See, for example, the detailed findings and reasons set out by the family court in *In re Cuevas (No. 64-1519-P),* 5 Haw. Bar J. 29 (1967). Although such a formal statement of reasons is ordinarily not required, we believe that given the present practice of electronically recording waiver proceedings, the practice suggested herein may be necessary to insure that this Court will be able to adequately evaluate whether the family court has given careful consideration to the waiver decision.